UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRAD CONWAY and
JOSETTE CARUSO,

               Plaintiffs,

   -v-

G. TODD CONWAY, FRED FARKOUH,
CHARLES     FABRIKANT,     HAZIM
AUDALLA, AMERICAN ARBITRATION
ASSOCIATION, R. CHRIS REGAN, DAVID
BONDY,  DAVID  C.  ROBERTS,  and
DEANNA L. KOESTEL,

            Defendants, and

AUTOCLEAR LLC,

            Necessary Party
            Intervenor.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/22/19

No. 17-cv-8245 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

    Plaintiffs Brad Conway ("Conway") and Josette Caruso, proceeding *pro se*, bring this

action against (1) several directors of Autoclear LLC ("Autoclear"), including Conway's brother

G. Todd Conway ("Todd"), Fred Farkouh, Charles Fabrikant, Chris Regan, and David Bondy (the

"Director Defendants"); (2) an Autoclear employee, Hazim Audalla; (3) two of the company's

attorneys, David Roberts and Deanna Koestel (the "Lawyer Defendants" and together with the

Director Defendants, the "Company Defendants"); and (4) the American Arbitration Association

("AAA"), raising claims for declaratory judgment, breach of fiduciary duty, and damages under

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, in

connection with a long-running dispute over the control of Autoclear. Now before the Court are

motions to dismiss filed by AAA and the Company Defendants. For the reasons set forth below, those motions are GRANTED. Also under consideration are the Court's August 15, 2018 and September 4, 2018 orders directing Plaintiff Brad Conway to show cause why he should not be sanctioned for statements made in his application to proceed *in forma pauperis* and in an extension request. (Doc. Nos. 60, 66.) For the reasons set forth below, the Court concludes that monetary sanctions are warranted.

## I. BACKGROUND[1]

This action stems from a long-running dispute over the control of Autoclear, LLC, which manufactures and sells metal detectors and other "security checkpoint equipment." (Company Def. Mem. at 3.) In October 2010, members of Autoclear voted to remove Brad Conway as a board member and prohibited him from exercising day-to-day responsibility over the company. (Doc. No. 55-1, Ex. B at 7:5–10.) Conway disputed the results of the election, and in May 2011, the Director Defendants (along with two other individuals who are not parties to this suit, Edward Matthews and Robert Bailey) filed a suit in the Superior Court of New Jersey, Essex County, seeking to remove him. (*Id.* at 7:11–18.) *See also Regan v. Conway*, No. ESX C 123-11 (Sup. Ct. N.J., Essex Cty.). Autoclear – at that time under Conway's control – intervened and demanded arbitration, which the Court ordered. (Doc. No. 55-1, Ex. B at 7:11–18; *see also* Doc. No. 55-1,

---

[1] The facts set forth in this Opinion and Order are taken from Plaintiffs' First Amended Complaint (Doc. No. 11 (the "FAC")), the exhibits thereto and the documents incorporated by reference therein, and other documents of which the Court may take judicial notice. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In connection with the motions to dismiss, the Court has also considered AAA's memorandum of law in support of its motion to dismiss (Doc. No. 46), Plaintiffs' memorandum in opposition to AAA's motion to dismiss (Doc. No. 61), AAA's reply memorandum in support of its motion to dismiss (Doc. No. 67), the memorandum in support of the motion to dismiss filed by the Company Defendants (Doc. No. 56) to which Conway never responded (*See* Doc. No. 77 at 7:18-19), and the various declarations in support thereof and exhibits attached thereto. In connection with the Court's ruling regarding sanctions, the Court has considered the various letters by the parties throughout this case, Conway's response to the Court's orders to show cause (Doc. No. 72), and the Company Defendants' submission regarding the attorneys' fees incurred in this action (Doc. No. 79).

Ex. B at 104–12; Doc. No. 55-2, Ex. H ¶ 13 (Autoclear operating agreement, providing for the arbitration of all "material dispute[s]").)

The Arbitrator, Robert C. Garofalo, an AAA arbitrator applying AAA rules, divided the arbitration into two phases. The first phase ("Phase I") – which ultimately lasted five years – addressed the control of Autoclear. (Doc. No. 55-1, Ex. B at 8:23–9:4.) During Phase I, Conway remained in control of Autoclear, loaned himself almost $1 million, and in 2013, amended the LLC's operating agreement, changing its domicile to Belize. (*Id.* at 9:5–18.) Around the same time, the Director Defendants and their state-court co-plaintiffs convened a board meeting and adopted a resolution removing Conway from managerial control of the company, replacing him with Todd as CEO. (*Id.* at 9:12–18.)

Conway, unsurprisingly, objected to the Director Defendants' decision to remove him as the head of Autoclear, and the parties contested the validity of the board meeting and Conway's attempt to move the company to Belize. On October 6, 2015, the Arbitrator sided with the Director Defendants and their state-court co-plaintiffs, entering a Partial Final Award providing that (1) Conway's attempt to amend the Autoclear operating agreement was "null and void," and (2) the Director Defendants' changes to the composition of the Board were valid. (Doc. No. 55-3, Ex. L.) The Arbitrator left the question of the validity of various ownership interests in the company, including Conway's, for Phase II of the arbitral proceeding. (*Id.*) The Superior Court confirmed the Phase I award on January 28, 2016, but stayed the award to allow the parties to plan an orderly change in the day-to-day control of Autoclear. (Doc. No. 55-1, Ex. B.)

The stay lifted on February 8, 2016. (Doc. No. 55-4, Ex. N.) The same day, Conway (1) held an emergency shareholder meeting transferring control of the company to himself, and (2) worked with Plaintiff Josette Caruso, then an Autoclear employee, to remove Autoclear computers

from the company's New Jersey office.[2] (Doc. No. 55-2 at Ex. C, 7:7–18.) The Director Defendants and their state-court co-plaintiffs sought emergency relief, which the Superior Court granted. (*Id.*; *see also* Doc. No. 55-4, Ex. O.) On June 7, 2016, Judge Thomas M. Moore of the Superior Court of New Jersey entered a permanent injunction barring Conway from, among other things, going onto Autoclear property, attempting to run the company, and representing that the company is a Belizean entity. (Doc. No. 55-4, Ex. Q.) In the order entering the injunction, Judge Moore specifically found that Conway's February 8, 2016 attempt to re-take control of the company was "null, void *ab initio*, defective, and [to be] given no legal force or effect." (*Id.* at 3 ¶ 4.) The Appellate Division of the Superior Court of New Jersey dismissed Conway's appeal on July 28, 2017 because of Conway's failure to file a conforming brief. (*See* Doc. No. 55-2, Ex. F at 40:8–18.)

Plaintiffs, proceeding *pro se*, then brought this suit on October 25, 2017. (Doc. No. 2.) On November 15, 2017, the Director Defendants – in the belief that Conway had violated Judge Moore's June 7, 2016 injunction through various statements in the complaint before this Court – sought relief in state court. (Doc. No. 55-2, Ex. F at 13:12–14.) In the meantime, Chief Judge McMahon, to whom this case was previously assigned, ordered Plaintiffs to amend their complaint, and on January 23, 2018, granted Conway's application to proceed *in forma pauperis*. (Doc. No. 7.)

Meanwhile, Phase II of the arbitration proceeded apace. On January 5, 2018, the Arbitrator issued a partial final award directing Conway to pay back the balance of the $970,000 loan he had taken from Autoclear. (Doc. No. 55-3, Ex. K.) Defendants sought to confirm that award in state

---

[2] Caruso was ultimately fired by Autoclear. (FAC at 33.) Plaintiffs assert that the firing came "merely because of the way she chose to vote her member interests" (*id.*), while the Company Defendants assert that she was terminated because of her role in removing computers from Autoclear property (Doc. No. 56 at 8–9).

court, and Judge Moore consolidated his planned hearing on that award with the hearing on the Director Defendants' request for relief under the June 7, 2016 injunction, scheduling a hearing for February 16, 2018. (Doc. No. 55-2, Ex. F at 10:23–24, 14:18–15:10.) However, three days before the hearing, Conway removed the state court action to the United States District Court for the District of New Jersey. (*See Regan v. Conway*, D.N.J. Case No. 18-cv-2104 (SDW) (CLW) (the "D.N.J. Action"), Doc. No. 1.) Conway then moved to transfer that case to this District for consolidation with this action (D.N.J. Action, Doc. No. 2), and the Director Defendants and Autoclear moved to remand (D.N.J. Action, Doc. No. 5). On April 3, 2018, Judge Susan D. Wigenton of the District of New Jersey entered an order remanding the suit to state court, reasoning that she lacked jurisdiction to entertain the dispute. (D.N.J. Action Doc. No. 21; *see also* D.N.J. Action Doc. No. 23 at 28:10–21.) The action returned to state court, where Judge Moore set a hearing for May 23, 2018. (*See* Doc. No. 55-2, Ex. F at 18:14–15.) On May 22, 2018, Conway again attempted to remove the state court action to the District of New Jersey, whereupon Judge Wigenton promptly dismissed it for lack of subject matter jurisdiction and remanded it to state court. (*Id.* at 18:17–19:10.)

Simultaneously, in this suit, Plaintiffs filed their First Amended Complaint on April 5, 2018. (Doc. No. 11 (the "FAC").) The First Amended Complaint, which is 101 pages of rambling prose with another 110 pages of exhibits, accuses Defendants, and particularly Audalla, of an array of misconduct – such as, for example, falsifying expense reports, selling Autoclear equipment to prohibited buyers in Afghanistan and Syria, and improperly causing Autoclear to assume debts. The First Amended Complaint then sets out four claims. In Count I, Plaintiffs ask the Court to enter a declaratory judgment against AAA regarding the conduct of the pending arbitration. In Count II, Plaintiffs seek damages from the Company Defendants and Audalla under RICO. Count

III asks the Court to enter a declaratory judgment providing that the February 8, 2016 transfer of control is valid and that Conway in fact controls the company. Finally, Plaintiffs seek in Count IV to recover damages for various breaches of fiduciary duty supposedly committed by the Director Defendants and Audalla.

On May 14, 2018, the case was reassigned to my docket. On May 21, 2018, in light of Conway's *in forma pauperis* status, the Court directed the U.S. Marshals to attempt to serve the operative First Amended Complaint. (Doc. No. 21.) Consequently, all Defendants have been served and have appeared with the exception of Defendant Audalla, who does not reside in the United States and who has not been served.

On May 23, 2018, Judge Moore held a hearing regarding Plaintiffs' various violations of the June 7, 2016 order. At that hearing, Conway maintained that he was the rightful head of Autoclear because of the changes he made to the company's operating agreement during Phase I and because of the February 8, 2016 transfer of control. (Doc. No. 55-2, Ex. E at 23:7–21.) Judge Moore was unpersuaded, concluded that Conway had violated the June 7, 2016 order (*see* Doc. No. 55-2, Ex. F at 42:19–20), and sanctioned him $503,571.88 (Doc. No. 55-5, Ex. S). To effectuate his injunction, Judge Moore directed Conway to either withdraw from this suit, dismiss it, or "amend the complaint to eliminate any language that violates" state court orders. (Doc. No. 55-2, Ex. F at 43:18–44:3.) Judge Moore also confirmed the arbitrator's award requiring Conway to repay the loan he received from Autoclear. (*See* Doc. No. 55-2, Ex. G at 10:1–8, 13:7–18.) Conway repaid the balance of the loan with a personal check in the amount of $739,226.14 dated June 15, 2018 (*see* Doc. No. 26-2), and also promptly paid the sanctions amount (*see* Doc. No. 43 at 2).

In response to Judge Moore's order, on June 7, 2018, Plaintiffs filed a Second Amended Complaint in this action. (Doc. No. 15.) However, Plaintiffs obtained leave from neither this Court or their opponents to amend their complaint. *See* Fed. R. Civ. P. 15(a). (*See also* Doc. No. 17 (letter from Conway informing the Court of the filing of the Second Amended Complaint, but failing to request leave to do so).) Accordingly, as the Court noted during the October 13, 2018 conference in this case, the First Amended Complaint remains the operative pleading in this action. (Doc. No. 77 at 57:6–13.)

AAA moved to dismiss the First Amended Complaint on July 19, 2018. (Doc. No. 44.) That motion was fully briefed on September 4, 2018. (Doc. No. 67.) The remaining Defendants that had been served in this case – the Director Defendants and the Lawyer Defendants, but not Audalla – moved to dismiss on August 7, 2018. (Doc. No. 54.) Although the Court granted Plaintiffs an extension of time in which to respond to the Company Defendants' motion, Plaintiffs failed to file an opposition brief. (*See* Doc. No. 66.) The Court deemed the motion fully submitted on October 12, 2018. (Doc. No. 77 at 7:18–19.)

The Company Defendants also filed a letter on August 14, 2018 challenging Conway's entitlement to proceed *in forma pauperis* in this action. (Doc. No. 59.) In response to that letter, the Court ordered the U.S. Marshals to cease attempting to serve any pleadings and directed Conway to explain why he should be permitted to proceed *in forma pauperis* in light of his ability to promptly pay the approximately $1.2 million in sanctions and judgments assessed against him in state court. (Doc. No. 60.)

In Conway's August 29, 2018 letter requesting an extension of Plaintiffs' deadline to oppose the Company Defendants' motion to dismiss (Doc. No. 63-1), Conway claimed, in support of that request:

[I am] searching for NYC counsel who can enter an appearance to represent me and Ms. Caruso going forward in this matter. With my serious physical and ambulatory disability, this has taken and takes some time; I have even had severe operations on my leg in recent weeks, [and am] on medication, which have impacted my efficiency and mobility.

(Doc. No. 63-1 at 1.) In response, the Company Defendants wrote a letter to the Court accusing Conway of lying about his medical condition and "ambulatory disability." (Doc. No. 63.) The Company Defendants subsequently provided the Court with a copy of a video reflecting Conway walking normally, in shorts, just days after he claimed to have undergone an operation on his leg. (*See id.*) In an Order issued on September 4, 2018, the Court granted Plaintiffs' request for an extension but directed Conway to show cause why he should not be sanctioned for making a false representation regarding his medical condition. (Doc. No. 66.) Conway responded to the Court's order in a document dated September 10, 2018 and filed on September 25, 2018. (Doc. No. 72.)

The Court held a conference on October 12, 2018 regarding Conway's *in forma pauperis* application and medical condition. (*See* Doc. No. 77.) After hearing argument, the Court (1) found that Conway had misstated his assets on his application to proceed *in forma pauperis* and revoked his *in forma pauperis* status, making him "responsible for court costs" (*id.* at 18:16–17), and (2) found that sanctions were appropriate because Conway had intentionally made false statements to the Court regarding his physical condition that "were material" and "designed to mislead the Court" (*id.* at 49:24–50:8). The Court reserved decision regarding the amount of sanctions and instructed Defendants to submit evidence regarding the hours spent in connection with litigating the issue of Conway's false statements (*id.* at 50:9–12), which they did on November 5, 2018 (Doc. No. 79).

## II. DISCUSSION

There are two open issues in this case: (1) whether Plaintiffs' First Amended Complaint can survive the motions to dismiss filed by AAA and the Company Defendants; and (2) whether

Conway should be sanctioned for making false representations to the Court. The Court will address the issues in turn.

## A. Defendants' Motions to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570.

As noted above, Plaintiffs bring four claims in total. The first, which seeks a declaratory judgment, is directed at Defendant AAA. The second, third, and fourth counts, which seek damages and further declaratory relief, are aimed at Audalla and the Company Defendants. The Court will address each of the two groups of claims separately.

1. AAA's Motion to Dismiss Count I

In Count I, Plaintiffs ask the Court to (1) issue a declaratory judgment directing AAA to replace the current Phase II arbitrator with a panel of three arbitrators, and to otherwise comply with its own rules, and (2) simultaneously evaluate whether a valid arbitration clause exists between the parties, and if not, stay the pending Phase II arbitration altogether. (*See* FAC 93–94.) AAA moves to dismiss this Count, the only portion of the First Amended Complaint that seeks relief directed toward the arbitral organization. For the reasons set forth below, AAA's motion must be granted.

First, Caruso is not a party to any arbitral proceeding (*see, e.g.*, Doc. No. 55-4, Ex. O), and it is entirely unclear what relief Plaintiffs request on her behalf or how any declaratory judgment directing AAA to conduct the Phase II arbitration in a certain manner would benefit her. As such, Count I does not state a claim for which relief could be granted as to Caruso and must be dismissed to the extent that it is brought on her behalf.

With respect to Conway, the First Amended Complaint is difficult to parse, but it appears to contend that (1) AAA rules require a three-arbitrator panel unless all parties consent, (2) AAA asked whether the parties consented to waiving the three-arbitrator requirement, (3) Conway informed AAA that an unnamed "key respondent . . . would not be willing to waive" the three-arbitrator requirement, but (4) the arbitrator concluded that all parties had consented to go forward with one arbitrator in Phase II. (*See* Opp'n at 61; *see also* FAC at 6.) As such, Plaintiff challenges the conduct of a pending arbitral proceeding. But federal courts lack the power to review interim rulings made by arbitrators – a party seeking to challenge an interlocutory arbitral ruling must wait until arbitration is complete. *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) ("[A] district court is without authority to review the validity of arbitrators' rulings prior to

the making of an award. Where . . . arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable.").

Conway's second argument – that the Court should stay arbitration because no valid arbitration agreement exists that authorizes the Phase II arbitral proceeding – is not really a claim against AAA at all. Rather, it is a request for relief as to other Defendants in this action that will incidentally affect AAA. Moreover, Conway sets out no basis, either in his First Amended Complaint or in his opposition to AAA's motion to dismiss, upon which this Court might conclude that he could ever be entitled to the relief he requests from AAA. *See Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Moya de Leon v. Napolitano*, No. 10-cv-6176 (DLC), 2011 WL 1990876, at *3 (S.D.N.Y. May 23, 2011) (dismissing a complaint that requested relief that the Court lacked authority to grant). Accordingly, Count I must be dismissed.

### 2. Director Defendants' and Lawyer Defendants' Motion to Dismiss

Plaintiffs' remaining three claims – Count II, which alleges RICO violations; Count III, which seeks a declaratory judgment regarding the pending arbitral proceedings; and Count IV, which aims to recover for breach of fiduciary duty – target Audalla and the Company Defendants. For the reasons set forth below, each must be dismissed.[3]

### a. Count II – Plaintiffs' RICO Claim

In Count II, Plaintiffs bring a single claim under RICO against Defendant Audalla and the Company Defendants, seeking to recover damages in excess of $850,000. (FAC at 94–97.) In

---

[3] Hazim Audalla is a named defendant in this action, but has neither been served nor appeared in this district. *See* Fed. R. Civ. P. 4(m). In an Order dated August 13, 2018, following several months of unsuccessful efforts by the U.S. Marshals to serve Audalla, who resides abroad, the Court stayed the action as against him. (Doc. No. 58 at 3.) The Court also stayed Plaintiffs' deadline to serve Audalla pending the Court's ruling on these motions. (*Id.*) Since Audalla is named with all the Company Defendants in Plaintiffs' RICO, declaratory judgment, and breach of fiduciary duty causes of action, the Court will address the claims against Audalla as well, even though he has not appeared or filed a motion. *See Nance v. Hazell*, No. 02 CV 3525 (FB), 2005 WL 859268, at *2 (E.D.N.Y. Apr. 15, 2005) (dismissing claims against unserved defendants where the complaints also fail to state a claim against them).

order to properly plead a RICO claim, Plaintiffs "must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 535 (S.D.N.Y. 2014) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). To set out a pattern of racketeering activity, a plaintiff must allege two or more predicate acts, as defined in 18 U.S.C. § 1961(1), that "pose a threat of continuous criminal activity" and are "related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017). The predicate acts upon which a RICO claim is based "must be related both to each other (termed 'horizontal relatedness') and to the enterprise as a whole ('vertical relatedness')." *Id.* at 60. A predicate act is horizontally related to the other predicate act or acts where the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Acts are vertically related to the RICO enterprise where "the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise." *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010).

For the purposes of this lawsuit, Plaintiffs define the RICO enterprise as the group consisting of "Audalla, the Action Group, the Norris [D]efendants and Bracewell" (the "Enterprise"). (FAC at 39.) Plaintiffs do not directly define the term "Action Group," but appear to use the phrase to refer to the Director Defendants. (*See id.* at 59 (referring to the "Action Group 5"); *see also id.* at 78 (referring to the group as including Fabrikant, Farkouh, Regan, and Bondy); *id.* at 83 (referring to Todd as a member of the Action Group).) Plaintiffs likewise fail to define the term "Norris Defendants," but appear to use that term as shorthand for the Lawyer Defendants and their firm, Norris McLaughlin P.A. (*See id.* at 26.) Finally, "Bracewell" refers to Bracewell

LLP, a law firm that at various points represented Audalla but which does not represent him in this action. (*Id.* at 26–27; *see also* Doc. No. 58.)

Plaintiffs' central theory of wrongful conduct is that the members of the Enterprise – which supposedly existed to allow the Director Defendants to wrest control of Autoclear away from Conway – combined to purchase Audalla's proxy in order to win control over Autoclear and later agreed to have Autoclear assume the debt they incurred in purchasing that proxy. (*See* FAC at 86.) But Plaintiffs do not plausibly allege any RICO-predicate conduct. Although the First Amended Complaint makes liberal use of adjectives and adverbs to describe the Enterprise's supposed actions, Plaintiffs have entirely failed meet their burden to explain how the Enterprise's conduct, if proven, would constitute a predicate act or acts within the scope of 18 U.S.C. § 1961. Plaintiffs may believe that various members of the Enterprise *should not* have purchased Audalla's proxy and *should not* have caused the company to take on various debts, but bad corporate decision-making does not amount to a RICO predicate, and the First Amended Complaint does not plausibly explain how any Defendant's conduct broke any law. Thus, Plaintiffs' vague allegations of wrongdoing are insufficient to properly set out a predicate act within the scope of RICO. *See Hirsch v. City of New York*, 300 F. Supp. 3d 501, 516 (S.D.N.Y. 2018) (dismissing a complaint where the plaintiff "d[id] not specifically identify what predicate acts Defendants are alleged to have violated").

Moreover, at least two predicate acts are required to state a RICO claim, *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001), and Plaintiffs have not properly alleged any other potential RICO predicates that are related to the Enterprise. To the extent Plaintiffs attempt to rely on RICO predicate offenses sounding in fraud, Plaintiffs' allegations must be dismissed, since Plaintiffs' disjointed First Amended Complaint does not allege fraudulent conduct with

particularity, as required by Federal Rule of Civil Procedure 9(b). *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). (*See also* FAC at 22 (alleging that "[d]uring the period from 2011 to 2015," Defendant Fabrikant "signed false documents and resolutions"); *id.* at 23 ("Farkouh impersonated the LLC Chairman, and a manager . . . in 2011–15"); *id.* at 25 (alleging that, at unspecified times, Todd and Roberts "wrote to, met and spoke to senior LLC bank officials when [the Director Defendants] were mere investors, impersonating the judicially held original Board").) Many of Plaintiffs' other allegations are so conclusory and indefinite that they fail under the relatively-lenient Rule 8 standard. (*See, e.g.*, FAC at 54–55 ("[The Director Defendants, Lawyer Defendants, Norris, and Bracewell] engaged in a collection of wrongful debts by . . . at least 7/3/16, 11/22/16, 12/16/16, 8/22/17 and all other dates when they discussed, emailed, communicated, conspired, settled, promised, delayed, attempted to pay, collect or resolve the massive debts and payment which they knew to be either wrongful, and each went along with that for differing or shared personal gains."); *see also id.* at 46–47 ("Another example of a conversion[] which took place involving Audalla, [Todd] or other [Director Defendants] involve[ed] some $120,000 in spare parts that were ordered by distributor BTAT or an affiliate, [and] the money [was] sent to Audalla or the account he controlled . . . but no order was ever requested by Audalla . . . , so he made off with the funds; this took place sometime in the early part of this decade . . . .").)

Even Plaintiffs' strongest allegations that any Defendant committed a RICO-predicate act are insufficient to state a claim. Specifically, Plaintiffs assert that Todd used screws to puncture the tires of two of Plaintiffs' witnesses' vehicles. (FAC at 22 ("[Todd] 'slow punctured' the front two tires of two key LLC witnesses against the [Director Defendants] and key executives, both of Asian American descent, in the darkness at the LLC facilities just before they would leave and

drive home on the highway, and sent anonymous text messages of car accidents to at least one such witness . . . ."); *id.* at 83 (asserting that Todd "actually embedded sheetrock screws in the two front tires of two of the three most material witnesses").) Although Plaintiffs do not identify the RICO-predicate statutes that Todd's purported conduct violated, the allegations sound in either (1) witness tampering in violation of 18 U.S.C. § 1512 or (2) retaliating against a witness in violation of 18 U.S.C. § 1513. But even accepted at face value, Plaintiffs' allegations are insufficient to make out a violation under either statute. First, to properly allege that Todd's conduct amounted to witness tampering, Plaintiffs needed to plead that Todd acted with the specific intent to influence or delay a witness's testimony or to cause that witness to withhold testimony. 18 U.S.C. § 1512(b). Likewise, to allege a violation of 18 U.S.C. § 1513, Plaintiffs needed to show that Todd acted with the "intent to retaliate" for testimony already given. 18 U.S.C. § 1513(b). But Plaintiffs have done neither. Accordingly, the First Amended Complaint fails to allege that Todd committed a RICO predicate by damaging the tires of two Autoclear employees.[4]

The only other allegations in Plaintiffs' prolix First Amended Complaint that even approach the Rule 8 threshold do not plausibly allege RICO predicate acts that are related to the supposed Enterprise. *See Reich*, 858 F.3d at 60–61. For example, Plaintiffs allege that Todd or other members of the Enterprise "may have been involved in a theft or conversion of ten generators from [Autoclear's] warehouse and testing facility in [New Jersey]." (FAC at 42.) But even

---

[4] In response to the Court's orders to show cause, Conway has filed a portion of a declaration signed by Yawkuen Lin, the first individual whose tires were supposedly cut. (*See* Doc. No. 72, Ex. E.) In that declaration, Lin recounts that approximately two months after experiencing the tire damage, he received two text messages from Todd. (*Id.*) Lin asserts that in the first message, Todd asked him to stop assisting Conway in his litigation efforts, and in the second, Todd sent a picture of a damaged automobile. (*Id.*) Allegations to this effect, were they to be included in a new amended complaint, might be enough to plausibly allege that Todd intended to dissuade Lin from testifying by placing screws in the Autoclear parking lot in the fall of 2014. However, even if Plaintiffs could allege that Todd had committed one predicate act, they would still be unable to set out the required second predicate act, *DeFalco*, 244 F.3d at 306, and the complaint would still be subject to dismissal, *see, e.g.*, *Williams v. Citigroup, Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (noting that leave to amend is properly denied where the proposed amendment would be futile).

assuming for the sake of argument that Plaintiffs' allegations meet the Rule 8 standard *and* that Todd's theft would qualify as "racketeering activity" within the ambit of 18 U.S.C. § 1961(1), Plaintiffs have not plausibly alleged an act that shares "the same or similar purposes, results, participants, victims, or methods of commission" or which is "otherwise . . . interrelated by distinguishing characteristics" to any other conduct engaged in by the Enterprise. *See H.J.*, 492 U.S. at 240 (quotation marks omitted). Consequently, Plaintiffs have not alleged an act that is horizontally related to the Enterprise. Nor have they alleged that Todd was able to carry out the supposed conversion because of his membership in the Enterprise or that his private theft related in any way to the activities or goals of the Enterprise. *See also Gross v. Waywell*, 628 F. Supp. 2d 475, 498 (S.D.N.Y. 2009) ("[D]efendants who allegedly constitute an illegal enterprise and engage in predicate offenses in furtherance of the defendants' own affairs or purposes, as opposed to the affairs or purposes of their common 'enterprise,' would fail to satisfy the requirements of RICO."). Thus, Plaintiffs have failed to allege conduct that is vertically related to the Enterprise. Any theft by Todd cannot, therefore, qualify as a RICO predicate.

Similarly, Plaintiffs assert that Audalla engaged in the "predicate act of selling and shipping [Autoclear] x-ray machines to Syria and Afghanistan" in violation of U.S. trade sanctions. (FAC at 42.) But again, even assuming that Plaintiffs' allegations clear the Rule 8 threshold and that Audalla's conduct qualifies as a RICO predicate under 18 U.S.C. § 1961(1), Plaintiffs have failed to plausibly allege that Audalla's conduct in converting the proceeds of sales of Autoclear equipment was in any way related to the Enterprise – either horizontally (because any alleged conversion is apparently entirely unrelated to any of the other misconduct set out in the First Amended Complaint) or vertically (because Plaintiffs do not plausibly allege that Audalla was

able to conduct the challenged conversions because of his position in the Enterprise). *Reich*, 858 F.3d at 60–61. Audalla's conduct cannot, therefore, support RICO liability in this case.

Finally, Plaintiffs accuse Audalla of falsifying various invoices and submitting those invoices to Autoclear for payment. (FAC at 57–59.) As before, even assuming that Audalla's supposed falsifications were plausibly alleged (which they are not) and qualified as RICO predicate conduct, Plaintiffs' complaint would still fail because Plaintiffs have not explained how Audalla's attempt to bilk Autoclear for his personal benefit was either related to any of the other conduct of the Enterprise (which supposedly existed to effect a change in the control of Autoclear) or was made possible because of Audalla's position in the Enterprise. *See Reich*, 858 F.3d at 60–61. Accordingly, these allegations, like the others in Plaintiffs' complaint, are insufficient to support Plaintiffs' RICO theory.

Put simply, Plaintiffs have failed to plead a plausible claim that any Defendant or group of Defendants is liable under RICO. Accordingly, Count II must be dismissed.

### b. Count III – Declaratory Judgment

In Count III, Plaintiffs seek a judgment that (1) declares that Conway properly reinstalled himself as the head of Autoclear on February 8, 2016, and (2) stays all pending arbitral proceedings. Although this claim is brought by both Plaintiffs, it really only aims to remedy injuries suffered by Conway. Accordingly, since Caruso will not benefit directly if Conway is re-installed as the head of Autoclear (even though Conway might, of course, restore Caruso to her former position), and because she is not a party to the arbitral proceedings pending in New Jersey, Caruso lacks standing to bring such a claim. Thus, the Court will treat this claim as brought only by Conway. In any event, because this claim essentially asks the Court to review judgments issued by a state court, the Court lacks jurisdiction to entertain this claim under the *Rooker-Feldman* doctrine.

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). Four requirements must be met for the doctrine to apply: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment," and (4) "the state court judgment must have been rendered before the district court proceedings commenced."[5] *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and alterations omitted).

On February 8, 2016, the day that Judge Moore lifted the stay of the arbitrator's Phase I award, Conway "held an emergency shareholders meeting," during which he claims "that a majority [of Autoclear's members] approved an emergency resolution that transferred authority [to control Autoclear] back to [him]." (Doc. No. 55-2, Ex. F at 7:19–24.) The legality of this meeting and supposed change in control was then vigorously litigated in New Jersey state court, and on June 7, 2016, Judge Moore entered an order (1) holding that the February 8, 2016 meeting, and the changes supposedly made during the meeting, were "null, void *ab initio*, defective, and given no force and effect" and (2) permanently restraining Plaintiff Conway from "representing to anyone" that the February 8, 2016 meeting "has any legal effect whatsoever." (Doc. No. 55-5, Ex. Q at 3.) Plaintiffs essentially ask this Court to overturn that judgment and to conclude that the February 8, 2016 election was valid.

---

[5] Although AAA does not ask the Court to invoke the *Rooker-Feldman* doctrine, "[a] challenge to a federal court's subject matter jurisdiction under the *Rooker-Feldman* doctrine 'may be raised . . . *sua sponte* by the court.'" *Doctors Assocs., Inc. v. Distajo*, 107 F.3d 126, 137 (2d Cir. 1997) (quoting *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996)).

Each of the elements of the *Rooker-Feldman* test is met on these facts. First, the federal court plaintiff here – Conway – lost in state court when Judge Moore declared the February 8, 2016 election null and void. Second, Conway complains of an injury – his loss of control over Autoclear – caused by Judge Moore's declaration that the February 8, 2016 election had no legal effect. Third, by asking the Court to declare that the February 8, 2016 election was valid after all, Conway has effectively asked the Court to review and reject the New Jersey state court judgment. And, finally, the state court ruling – which was issued by Judge Moore on June 7, 2016 (Doc. No. 55-5, Ex. O at 2) – was reached well before this action was commenced in federal court on October 25, 2017 (Doc. No. 1).[6] The Court therefore cannot entertain Count III, and it must be dismissed.[7]

### c. Count IV – Breach of Fiduciary Duty

Plaintiffs' final claim, for breach of fiduciary duty, likewise fails to state a claim for which relief may be granted. It bears noting that this claim is a *derivative* claim brought on behalf of Autoclear. (*See* FAC at 99.) Federal Rule of Civil Procedure 23.1(b)(3) therefore requires Plaintiffs to "state with particularity (A) any effort [made] . . . to obtain the desired action from the directors . . . and, if necessary, from the shareholders or members; and (B) the reasons for not

---

[6] In fact, Conway's appeal of that ruling was dismissed on September 29, 2017, nearly a month before the commencement of this federal action. (Doc. No. 55-2, Ex. F at 40:12–18.)

[7] Nor can the Court address Conway's request for a "stay [of] any arbitral proceedings that may seek to address issues after the previous election date of 11/13." (FAC at 98.) Although it is unclear exactly what Conway is referring to, to the extent he attacks the arbitrator's determination that the November 16, 2013 board election was valid, which has been confirmed by the Superior Court of New Jersey (Doc. No. 55-3, Ex. L), the Court is barred from exercising jurisdiction under the *Rooker-Feldman* doctrine for the reasons set out above. And to the extent that Conway aims to stop the pending Phase II arbitration proceedings, he is really attacking the Superior Court's original decision to compel arbitration. (*See* Doc. No. 55-1, Ex. A at 104–12.) That decision is adverse to Conway, is the source of the injuries of which he now complains, and was issued (long) before the beginning of this litigation. Accordingly, the *Rooker-Feldman* doctrine prevents this Court from reviewing the New Jersey state court's decision to compel arbitration. *Cf. Yonkers Elec. Contracting Corp. v. Local Union No. 3, Int'l Bhd. Elec. Workers' AFL-CIO*, 220 F. Supp. 2d 254, 259 (S.D.N.Y. 2002) ("A federal court does not have subject matter jurisdiction over a petition to compel arbitration after a state court has already ruled on the merits of that petition.").

obtaining the action or not making the effort." Plaintiffs' complaint fails to meet either of these criteria.

Plaintiffs' theory appears to be that various Defendants engaged in self-dealing in violation of their fiduciary duties to Autoclear under New Jersey law.[8] (FAC at 98–99.) Generally, if a majority of directors are conflicted and incapable of impartiality, a derivative plaintiff need not make a pre-suit demand because it would be futile. *See, e.g., In re Johnson & Johnson Derivative Litig.*, 865 F. Supp. 2d 545, 555–56 (D.N.J. 2011). But Plaintiffs here have failed to plead the necessary conflict with particularity. Plaintiffs have not identified the composition of the Autoclear board, which at one time apparently had seven members. (*See* FAC at PDF page 115.) Without any indication as to how many members might be required to vote to authorize a lawsuit, it is impossible to determine whether a demand would be futile. Further, as to the Defendants connected to Autoclear that Plaintiffs do name – Charles Fabrikant, Fred Farkouh, R. Chris Regan, David Bondy, and G. Todd Conway – Plaintiffs offer no particularized allegations of self-dealing. Instead, Plaintiffs rely on vague, conclusory assertions like the following allegation about Fabrikant:

> In 2016 if not before he knew of, should have known, or directly approved large conversions of LLC monies and equity indirectly to himself personally, in the Action Group transfers of his and their own individual debts for a variety of past personal, very sizeable, paid expenses and debts to the LLC, in secret for personal tax and cash or debt benefits to himself, and themselves as individuals[.] During the period from 2011 to 2015 [he] signed false documents and resolutions, and from 2016 used his position as a LLC purported Board member from 2/8/16 to present to convert funds or reduce his debts, to his account from the LLC by transferring his past expenses and debts to the LLC.

(FAC at 22.) Plaintiffs' allegations against the other four Defendants connected to Autoclear are even less specific. Plaintiffs have therefore failed to meet their burden to plead with particularity

---

[8] Autoclear is a New Jersey LLC. (Doc. No. 55-2, Ex. H.)

the circumstances that would render any demand futile. Their breach of fiduciary duty claim must therefore be dismissed.

## B. Sanctions

The Court must next determine whether Conway should be sanctioned for two false representations to the Court – the first regarding his *in forma pauperis* status and the second regarding his health. In short, monetary sanctions are appropriate under Rule 11 and in the exercise of the Court's inherent powers.

Federal Rule of Civil Procedure 11(b)(2) provides that, by filing a document with the Court, an unrepresented party certifies, to the best of his or her knowledge, that the factual assertions in the submission "have evidentiary support." *See also Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 142 (S.D.N.Y. 2005) ("[Plaintiffs'] status as *pro se* litigants does not insulate them from the imposition of sanctions by this court under Rule 11 of the Federal Rules of Civil Procedure."). After giving a party "notice and a reasonable opportunity to respond," the Court may sanction a party that has violated Rule 11(b)(2) in an amount that "suffices to deter repetition of the conduct," including by ordering the breaching party to pay "the reasonable attorney's fees and other expenses resulting directly from the violation." Fed. R. Civ. P. 11(c)(1), (4). Put another way, Rule 11 allows a court to sanction a party for "making false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008). Separately, the Court has the inherent power to sanction Conway – or any litigant – on a showing of subjective bad faith. *Monroe v. Geo Grp., Inc.*, No. 14-cv-3130 (ER), 2017 WL 3973942, at *7 (S.D.N.Y. Sept. 7, 2017). The fact that Conway, who has a law degree, is proceeding *pro se* is not a barrier to the Court's use of its inherent power. *See Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992) (affirming the imposition of inherent-authority sanctions against a *pro se* litigant). Courts may impose monetary sanctions via their inherent powers, but those

sanctions must be "compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("In other words, the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." (quoting *Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994))).

The Court has already found that Conway acted in subjective bad faith when he claimed to have "a serious physical and ambulatory disability" and to have "had severe operations on [his] leg in recent weeks" that prevented him from retaining counsel and necessitated an adjournment of the Court's previously-issued scheduling order. (Doc. No. 63-1 at 1; *see also* Doc. No. 66.) Specifically, after reviewing (1) a video submitted by the Company Defendants showing Conway wearing shorts and walking normally just days after he claimed to have undergone a serious medical procedure on his leg and (2) Conway's submissions, and discussing with him at length the nature of his medical condition, the Court concluded that there was nothing in the record indicating that Conway was "unable to walk, unable to carry on the *pro se* litigation in this case, [or] unable to retain counsel." (Doc. No. 77 at 36:9–17.) The Court further concluded that in view of all the evidence, Conway had "misled" the Court – and done so "deliberately." (*Id.*) "Making a false statement with intent to mislead a court certainly evidences subjective bad faith." *Monroe*, 2017 WL 3973942, at *8 (cleaned up). The Court likewise found that Conway acted in bad faith when applying to proceed *in forma pauperis*, as he understood that he had various assets and was obligated to disclose them but chose not to. (*Id.* at 18:1–17.) Thus, as the Court explained on the record during the October 12, 2018 conference, sanctions are appropriate under both Rule 11 and the Court's inherent authority. (*See id.* at 42:20–22.)

Accordingly, the Court will sanction Conway in the amount of the attorneys' fees reasonably incurred by the Company Defendants in responding to Conway's false statements about his financial condition and medical history. When requiring a litigant to pay his opponent's legal fees, "the award should be based both on the total amount of reasonable attorneys' fees and costs attributable to the sanctioned party's misconduct and the amount needed to serve the deterrent purposes of Rule 11." *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 34 (E.D.N.Y. 2018). The Second Circuit's caselaw instructs that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation" or portion of the litigation in issue "multiplied by a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008). That calculation generates "a 'presumptively reasonable fee.'" *Milea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill*, 522 F.3d at 183). The Court may then adjust this figure – the "lodestar" – to account for factors not already included in the hourly rate or number of hours expended. *Id.* at 167.

As an initial matter, "the reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. To determine what a client would pay, the Court should consider the following non-exhaustive set of factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Thus, "whether the attorneys on this case properly commanded the rates they seek in the

marketplace is not dispositive of the rate that they are to be awarded. Rather, *Arbor Hill* demands that [courts] determine the *cheapest* hourly rate an effective attorney would have charged." *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 364 (S.D.N.Y. 2018). Litigants are generally presumed to hire counsel in the forum where the suit is pending, and courts should consider the rates charged in that area when determining the reasonable hourly rate. *Arbor Hill*, 522 F.3d at 191.

The Company Defendants have provided the hours worked and hourly rates charged by the four attorneys and one paralegal who worked to respond to Conway's statements regarding his *in forma pauperis* status and his medical condition. (*See* Doc. No. 79-1. These include Robert Mahoney (1 hour at $550 per hour), David C. Roberts (8.9 hours at $450 per hour), Deanna Koestel (7.1 hours at $380 per hour), Nicholas A. Duston (43.4 hours at $240 per hour and 1.1 hours at $230 per hour), and Roberta Bass (0.8 hours at $190 per hour). The rates charged by the representatives of the Company Defendants are reasonable. The attorneys' rates – $550, $490, and $380 for partners (Mahoney, Roberts, and Koestel, respectively) and $240 for an associate (Duston) – are justified by counsel's experience (*see* Doc. No. 79 ¶ 9) and are apparently well within the range charged by lawyers in both this District, *see, e.g.*, *H.B. Auto. Grp., Inc. v. Kia Motors Am., Inc.*, No. 13-cv-4441 (VEC) (DF), 2018 WL 4017698, at *6 (S.D.N.Y. July 25, 2018) (collecting cases), *report and recommendation adopted* No. 13-cv-4441 (VEC) (DF), 2018 WL 4007636 (S.D.N.Y. Aug. 22, 2018), and central New Jersey, where the four attorneys are based, *see, e.g.*, *Asta Funding, Inc. v. Neal*, No. 14-2495 (KM), 2017 WL 4330362, at *11 (D.N.J. Sept. 29, 2017) (collecting cases approving rates up to $750 per hour for experienced attorneys). While the rate charged by Bass, a paralegal, is slightly higher than standard rates in New Jersey, *see Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 05-897 (WHW) (CLW), 2018 WL 2378406, at

\* 17 (D.N.J. May 23, 2018) (describing the standard hourly rate in New Jersey as approximately $125 – $140 for paralegal work), it is below those that courts in this District have approved, *see Star Ins. Co. v. A&J Constr. of N.Y., Inc.*, No. 15-cv-8798 (CS) (JCM), 2018 WL 6177857, at \*4 (S.D.N.Y. Nov. 26, 2018). Moreover, the rates charged by all five professionals are reasonable in light of the complexity of this case. And importantly, Conway has not attempted to challenge the reasonableness of those rates. Accordingly, the Court approves the hourly rates charged by Mahoney, Roberts, Koestel, Duston, and Bass.

With one exception, the Court also approves the hours worked by the various professionals. As noted above, Rule 11 and the Court's inherent power permit the Court to require a litigant to pay the attorneys' fees that are attributable to the sanctioned misconduct. The Court has reviewed the billing entries submitted by counsel for the Company Defendants (*see* Doc. No. 79-1) – to which Conway has not objected – and all but one are (1) commensurate with the work described and (2) directly relate to the Company Defendants' response to Conway's false statements. Such entries are therefore recoverable. The one outlier is the first line item, a 1.1–hour entry for hours worked by Duston on October 27, 2017. The narrative associated with that line item reads:

> Investigate potential new federal lawsuit instituted by Brad Conway and review SDNY complaint discovered pursuant to same investigation.

(Doc. No. 79-1.) While Duston's work was surely appropriate and necessary in the context of this litigation, it was *not* relevant to the Company Defendants' responses to Conway's statements in his application to proceed *in forma pauperis* and regarding his medical condition. The Court will therefore disregard that entry in awarding fees, and will award the Company Defendants' attorneys' fees in the amount of $17,924.

The Company Defendants also seek to recover the fees incurred by the private investigator they hired to investigate Conway's assertions of ill health. (*See* Doc. No. 79 ¶ 13; *see also* Doc.

No. 79-3.) The Court agrees that such costs are recoverable. Although the Company Defendants have simply presented the investigator's bills without explaining the reasonableness of the amounts incurred, Conway has not objected to the investigator's rates, which are within the range approved by courts in this District for non-legal staff work. (*See* Doc. No. 79-3 (listing a $100 hourly rate).) *See also HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 721–22 (S.D.N.Y. 2018) (collecting cases). And the private investigator's charges for mileage are at the IRS standard mileage rate. (*See* Doc. No. 79-3.) *See also* Internal Revenue Serv., *2018 Standard Mileage Rates* 2 § 3 (2018), https://www.irs.gov/pub/irs-drop/n-18-03.pdf. As such, the Court will sanction Conway for the amounts incurred by the Company Defendants' private investigator – an additional $2,218.10, for a total of $20,142.10.

The Court will not, however, sanction Conway for the amounts incurred by the Company Defendants in moving to dismiss this case. The Court agrees with the Company Defendants' broad point that Conway's suit was essentially an improper attempt to appeal judgments entered by the arbitrator and confirmed by the Superior Court. But Conway has already been sanctioned a staggering $503,571.88 by the Superior Court for his conduct in that litigation. (Doc. No. 55-5, Ex. S.) Moreover, although Conway's claims are properly dismissed as meritless, any sanction for vexatious conduct in the course of this litigation is best imposed by the court supervising the suit – the Superior Court of New Jersey – which has ordered Conway to conform his conduct to certain standards.

Accordingly, pursuant to Rule 11 and the Court's inherent authority, the Court will sanction Brad Conway $20,142.10 – the amount incurred by the Company Defendants in responding to his improper application to proceed *in forma pauperis* and his statements about his medical condition:

Furthermore, the Court notes that it directed the U.S. Marshals Service to serve Defendants on Plaintiff Brad Conway's behalf based on his fraudulent *in forma pauperis* application. The U.S. Marshals Service in both the Southern District of New York and the District of New Jersey collectively incurred $756.24 in fees related to this service. Accordingly, pursuant to Rule 11 and the Court's inherent authority, the Court will also sanction Brad Conway for that amount.

III. CONCLUSION

For the reasons set forth above, Defendants' motions are GRANTED, and IT IS HEREBY ORDERED that Plaintiffs' First Amended Complaint is DISMISSED. IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 11 and the Court's inherent authority, Plaintiff Brad Conway is sanctioned in the amount of $20,898.34. Of that total, $20,142.10 shall be paid to the Company Defendants through their counsel, Norris, McLaughlin & Marcus P.A.; $428.29 shall be paid to the U.S. Marshals Service for the Southern District of New York; and $327.95 shall be paid to the U.S. Marshals Service for the District of New Jersey. All payments shall be made by April 15, 2019, and Conway shall file an affidavit attesting to payment by that date.

The Clerk of Court is respectfully directed to terminate the motions pending at 44, 54, and 79, mail a copy of this Order to Plaintiffs, and to close this case.

SO ORDERED.

Dated:     March 22, 2019
          New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation